## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| AERITAS, LLC, | ) | |
| | ) | Miscellaneous Action No.: |
| Plaintiff, | ) | 1:13-MI-0003 |
| | ) | |
| v. | ) | (derived from *Aeritas, LLC v. Delta* |
| | ) | *Airlines, Inc.*, Case No. 11-cv-00969- |
| DELTA AIRLINES, INC., | ) | SLR (D.Del.)) |
| | ) | |
| Defendant. | ) | |

## NON-PARTY NCR CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

On March 1, 2012, Aeritas served a subpoena upon non-party NCR Corporation ("NCR") in this District in connection with an action pending in the United States District Court for the District of Delaware. Now nearly nine months later Aeritas asks this Court to compel NCR to produce NCR's closely-guarded source code, which has no bearing on the parties' claims or defenses but which is absolutely vital to NCR's market competitiveness. The motion to compel also seeks to compel NCR, a non-party, to do the work of a party and produce documents that Aeritas should have – and presumably still could – obtain from a defendant party in the underlying action.

1

NCR timely served its objections to the subpoena and opened negotiations with Aeritas's counsel about narrowing the subpoena's scope. NCR proposed to narrow the subpoena to address NCR's objections and indicated that it would then produce documents. Aeritas responded without adequately addressing NCR's concerns and then seemingly dropped the matter. Indeed, it was not until November 15, 2012 that Aeritas's attention returned to the subpoena, a disinterest that demonstrates the irrelevance to the underlying lawsuit of the information sought from NCR.

In any event, when Aeritas returned to the subpoena late last year after a lengthy hiatus, NCR again expressed its willingness to produce documents, but NCR also again sought to narrow the scope of the subpoena through negotiation before undertaking the expensive and time-consuming task of making a document production. In that regard, NCR sought Aeritas's agreement that Aeritas would not seek from NCR documents that could be obtained from a defendant in the underlying suit, that were privileged, or that revealed NCR's source code. Aeritas rejected NCR's proposed accommodation and instead filed this motion to compel, which should be denied for the following reasons:

(1)  Even though NCR is a non-party, Aeritas has requested that NCR produce NCR's source code, which is irrelevant to the underlying lawsuit but vital

2

to NCR's competitiveness in the marketplace.  Although a protective order is generally sufficient to address confidentiality concerns, courts have recognized that a non-party's source code marks an exception to that general rule, and here it would constitute an undue burden on NCR to require the source code's production. *See, e.g, Realtime Data, LLC v. MetroPCS*, No. 12cv1048-BTM (MDD), 2012 WL 1905080, at *3 (S.D. Cal. May 25, 2012) ("The Court agrees with Ortiva that production of its source code constitutes an undue burden.  Ortiva is not a party and not alleged to be an infringer. Ortiva's concerns regarding the security of its source code, despite the protective order, cannot be ignored"); Fed. R. Civ. P. 45(c)(3)(A)(iv) (authorizing the Court to quash or modify a subpoenas that "subjects a person to undue burden.").

(2)  Most of the information sought through Aeritas's subpoena to non-party NCR is available from one or both of the defendants. *Brilliant Alternatives, Inc. v. Feed Mgmt. Sys., Inc.*, No. 1:09-CV-2348-RWS, 2011 WL 723336, at *6 (N.D. Ga. Feb. 22, 2011) (denying motion to compel directed to non-party because "the Plaintiffs sought much of the same information already requested from the Defendants") (Story, J.); Fed. R. Civ. P. 26(b)(2)(C)(i) (providing that the Court must limit discovery that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less

expensive."); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (denying motion to compel directed to non-party because "the vast majority of the discovery sought from TPGI is discovery obtainable from a source more direct, convenient, and less burdensome – namely, from Defendants.").

(3)  The subpoena seeks production of privileged information.  Fed. R. Civ. P. 45(c)(3)(A)(iii) (authorizing the Court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies."); *Brilliant Alternatives,* 2011 WL 723336, at *6 (denying motion to compel directed to non-party because the requesting party "defined 'FMS' and 'Cargill' in their subpoena to include their respective attorneys. Including attorneys in the 'Cargill' definition facially swept in privileged communications and was thus overbroad, apart from the duplicative requests.") (Story, J.).

* * *

In sum, the Court should deny Aeritas's motion to compel against non-party NCR and instead enter a protective order approving NCR's good faith offer to produce the subpoenaed documents subject to several limitations.  Specifically, NCR should not be required to produce its source code, privileged communications, or documents that can just as easily be obtained from a party.  NCR's proposed production balances NCR's objections against Aeritas's desire to obtain

4

information through a non-party subpoena, and represents an evenhanded resolution to the motion.

## I.     BACKGROUND

### A.     NCR's Mobile Pass Service plays at most a tangential role in Aeritas' underlying infringement lawsuit.

The underlying patent infringement action from which Aeritas issued the subject subpoena involves two related patents directed to a "wireless e-commerce transaction."  *See* Ex. A and B, Weiss Decl.  Although Aeritas described these patents as a system "that allows travelers to use their mobile devices as boarding passes in airline travel," Aeritas Br. at 2, the e-boarding pass plays but one small part in the overall boarding process accused of infringement.  NCR only provides a service, called Mobile Pass, to Delta and US Air that delivers an e-boarding pass to the mobile devices of Delta's and US Air's passengers.  Borucki Decl., ¶ 4.

To provide more context, the Aeritas's patents are directed to a method for "facilitating a wireless transaction . . . defined by a purchase action with respect to a product or service, and a fulfillment action associated with the purchase action." *See, e.g.,* '589 Patent, Ex. A, Weiss Decl.  Aeritas has accused the entire ticket purchase/boarding process of Delta and US Air of infringement, including process steps like scanning the e-boarding pass, allowing bodily entry into or through

physical barriers, approving purchase requests from passengers, and removing airplane seats from available inventory.

*The only* step provided by NCR in the accused purchase/boarding process is the delivery of an e-boarding pass.  Borucki Decl., ¶ 5. Importantly, NCR is not involved in, nor does it provide any other product or service related to, any of these steps of the purchase and boarding processes used by Delta and US Air.  Borucki Decl., ¶ 6.

## B.    NCR's repeated attempts to cooperate in discovery and willingness to make a production of reasonable size and scope.

On March 1, 2012, Aeritas served a subpoena on NCR to which NCR served timely objections on March 13, 2012.  Murphy Decl., ¶ 3.  On March 15, 2012, in a conference call with Aeritas's then counsel, Branden Frankel, NCR attempted to reach agreement with Aeritas on an acceptable scope of the subpoena.  Murphy Decl., ¶ 4.  On March 27, 2012, instead of addressing the concerns raised by NCR's objections, Aeritas proposed "a limited initial production" whereby Aeritas reserved "the right to request supplementation of the initial production and/or further production pursuant to subpoena topics not covered by the initial production."  Murphy Decl., ¶ 5.

On April 13, 2012, NCR explained its concerns about that approach, which would have left the subpoena "open-ended" without addressing NCR's objections

or narrowing the scope of the subpoena in any way.  Nonetheless, NCR proposed to produce: (1) NCR's technical documents, excluding source code, regarding Mobile Pass' delivery of e-boarding passes for Delta and US Air; (2) documents with the names of NCR personnel familiar with Mobile Pass; (3) to the extent they existed, documents reflecting the benefits of Mobile Pass; and (4) non-privileged communications about the patent infringement lawsuits with Delta and US Air. Murphy Decl., ¶ 6.  On May 17, 2012, Aeritas conveyed its refusal to narrow the scope of its subpoena and therefore its rejection of NCR's proposal.  Murphy Decl., ¶ 7.  On May 29, 2012, NCR tried yet again to find an acceptable compromise and asked Aeritas to narrow the subpoena such that it would not include NCR's source code.  Murphy Decl., ¶ 7.

Aeritas ignored NCR's proposal for five and a half months.  Murphy Decl., ¶ 8.  On November 15, 2012, Aeritas, through different counsel Andrew Weiss, renewed its demand that NCR produce documents despite its objections.  Murphy Decl., ¶ 8.  The parties were unable to agree to an acceptable, non-objectionable scope for the subpoena, and this motion to compel followed.

## II.   ARGUMENT

Aeritas makes two legal contentions about the operation of subpoenas to non-parties that are without support: (1) that non-parties must produce documents

over their objections, Aeritas Br. at 5; and (2) that non-parties bear the burden of showing that the requested documents are available from opposing parties, Aeritas Br. at 7 ("NCR has made no effort to show that the documents sought by the Subpoena are in fact in the possession, custody or control of any defendant."). Both contentions fail.

## A.   A non-party such as NCR is not required to produce documents over its objections to a subpoena absent a negotiated agreement of the parties or a court order.

Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure provides that a non-party may object to the production of documents requested in a subpoena. Absent an agreement that would allow a non-party to withdraw its objections, the only recourse for the party serving the subpoena is to file a motion to compel.  *See* Fed. R. Civ. P. Rule 45(c)(2)(B)(i); *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 930 (N.D. Ill. 2010) ("Having raised a timely objection to the subpoena, Huron was not required to produce documents until Defendants obtained a court order.") (citing *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 690 (7th Cir. 2010)); Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2464 (3d ed.) ("the person receiving an overbroad subpoena is entitled to protection by making an objection pursuant to Rule 45(c)(2)," and "[t]he burden then shifts to the issuing party under Rule 45(c)(2)(i) to work the problem

out with the commanded person or to move the issuing court for an order compelling production or inspection.").

Here, NCR sought to negotiate a compromise with Aeritas that would address NCR's objections but that effort failed.  NCR remains willing to produce documents in response to the subpoena, but asks that the Court impose appropriate limitations on that production consistent with the proposed compromise that NCR has sought from the outset.

Although Aeritas erroneously claims in its brief that NCR "refused to produce any documents," the exhibits to the contemporaneously filed Declaration of Christopher Murphy demonstrate that NCR was (and is) willing to produce documents, but sought first to agree to narrow the subpoena's scope.  Aeritas contends that NCR must produce documents regardless of NCR's objections to the subpoena.  Indeed, Aeritas contends that it need not address NCR's objections because Aeritas had "the right to request supplementation of the *initial* production and/or further production pursuant to subpoena topics not covered by the initial production."  Murphy Decl., ¶ 5 (emphasis added).  Aeritas's proposed "drippy faucet" approach to responding to a subpoena would impose undue cost and uncertainty on NCR, a non-party that understandably wishes to make a single production and not have to repeatedly supplement its production.  Put differently,

as a non-party, NCR sensibly sought to determine the scope of its obligations on the front end, rather than having to repeatedly and inefficiently supplement that production over an extended period of time to satisfy Aeritas's follow up requests.

**B.**   **Aeritas has failed to establish that it cannot obtain the documents it subpoenaed from non-party NCR from the defendants to the underlying suit.**

Pursuant to Rule 45(c)(1) of the Federal Rules of Civil Procedure, an "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense" on a non-party.  To comply with Rule 45, Aeritas must have taken all reasonable steps to seek documents from defendants *before* seeking documents from NCR.  *Id.*

A subpoena that attempts to seek documents from non-parties that are available from parties should be quashed and/or objections on that basis sustained. *See, e.g., WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 896 (S.D. Ind. 2006) (quashing subpoena to non-party as creating an undue burden because the requesting party did not "contend or attempt to show that it has been unable to obtain this information from those parties to the underlying litigation"); *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (affirming order requiring party to first attempt to obtain documents from opposing party rather than non-party).  It also fosters judicial economy to allow the district court judge in

10

Delaware presiding over the underlying patent infringement case to make determinations about the scope of discovery, a process that would play out properly if Aeritas sought documents from Delta and/or US Air, the defendants.

The cases cited by Aeritas are inapposite to non-parties. For example, although Aeritas cites *Sabouri v. Ohio Bureau of Employment Services*, No. 2:97-CV-715, 2000 WL 1620915, at *5 (S.D. Ohio Oct. 24, 2000) for the proposition that it is allegedly irrelevant whether a "document may also be available from another source," Aeritas's reliance on *Sabouri* only adds force to NCR's position here. *Sabouri* addressed a situation where a party tried to avoid its discovery obligations by imposing them on a non-party; by contrast, here, the Court is presented with the opposite situation: NCR, a non-party, is simply asking that discovery be obtained from the defendants rather than NCR. Likewise, *Southeastern Mechanical Services, Inc. v. Brody*, No. 1:09-CV-0086-GET-SSC, 2009 WL 3095642, at *1 (N.D. Ga. June 22, 2009), does not support Aeritas here because in that case the subpoenaed party was the parent company of a party to the action.

## C.     NCR has raised meritorious objections.

Each of NCR's specific objections to requests 1-10 are meritorious and should be sustained. For ease of comparison to Aeritas' brief, NCR will discuss

11

each request in the same order presented in Aeritas' brief: Requests 2, 6-8, which Aeritas described as "technical documents and things"; Requests 9-10, "marketing documents and things"; and Requests 1, 3-5, "NCR customer information documents and things."

(1)   Request No. 2: All documents and communications related to the Patents-in-Suit.

This request is objectionable for at least two reasons: it is overly broad and burdensome, and it seeks privileged documents.

As to the first point, Aeritas defined "related to" in the subpoena as being used "in its customary broad sense" including within its scope anything "whatsoever being logically or factually connected with the matter discussed." *See* Weiss Decl., Ex. D.  Accordingly, absent NCR's objections, the subpoena would require NCR to produce all documents factually or logically connected in any way to the subject matter of the patents-in-suit.  That request's breadth would cover not only all privileged analyses of the patents-in-suit, as discussed below, but would also apply to the entirety of NCR's documents and communications regarding its Mobile Pass service – and perhaps even more NCR systems and products like travel kiosks because such systems are logically related (i.e. all travel systems) to the patents-in-suit.  On that basis alone, NCR's overbreadth objection should be sustained.

Furthermore, Aeritas effectively admits that this request covers privileged materials – "NCR may have performed infringement analyses of its products with respect to the patents-in-suit" – but nonetheless contends this information is relevant and discoverable. To the extent that NCR conducted an infringement analysis, that analysis would have been performed by NCR's counsel and would be privileged and not discoverable.

There is similarly no basis to contend that non-party NCR's evaluations of the patents-in-suit are relevant. What NCR thinks about the patents-in-suit with respect to NCR's own products and services is irrelevant to Aeritas's claims against Delta and US Air. As discussed above, NCR's Mobile Pass is but one very small part of the Delta and US Air process for purchasing tickets and boarding passengers.

    (2)    <u>Request No. 6: Documents (not including source code) sufficient to identify the design and operation of any Mobile Boarding Application used by one or more of the Defendants since 2007.</u>

            <u>Request No. 7: Documents sufficient to identify the configuration (or configurations) of any Mobile Boarding Applications used by one or more of the Defendants since 2007.</u>

Documents responsive to these requests, to the extent they exist, can and should be obtained from Delta and US Air. Aeritas's claim that it has "received very few documents" from Delta and US Air does not satisfy its obligation under

the law to obtain documents from parties to the litigation.  *See* Fed. R. Civ. P. 45(c); Fed. R. Civ. P. 1 (the purpose of the Federal Rules of Civil Procedure is to "secure the just, speedy, and inexpensive determination of every action and proceeding.").   Indeed, it may well be that Delta and US Air produced all of the documents that exist (and that NCR would be able to produce in any event).

NCR also objected to these requests as constituting an improper attempt to discover information about NCR systems that are not even involved in the lawsuit against Delta and US Air.  Aeritas's argument that these requests seek information as to the operation of Delta's and US Air's boarding systems misses this point. Aeritas defined "Mobile Boarding Application" much more broadly than the Mobile Pass service provided to Delta and US Air and included within its scope "any product, software, service, system or solution made available by or through or in conjunction with [NCR] that facilitates the use of a wireless device for the purpose of obtaining and using a boarding pass."  The Court should not permit such an expansive, untargeted inquiry into the competitively sensitive information of a non-party, especially where as here the requested information strays far from the issues disputed in the underlying suit.

    (3)    <u>Request No. 8: native source code (e.g., C++, Flash, etc.) for any</u>
<u>Mobile Boarding Applications used by one or more of the Defendants.</u>

NCR's source code underlying its Mobile Pass service irrelevant to the infringement claims at issue against Delta and US Air, and any conceivable evidentiary benefit the source code might provide is more easily obtained from other sources and is outweighed by the burden and prejudice that NCR would suffer from the source code's disclosure.  Fed. R. Civ. P. 45(c)(3)(A); Fed. R. Civ. P. 26(b)(2)(C).  As discussed above, the patents-in-suit claim in part the step of "receiving" or "communicating" a "transaction code to a wireless communication device."  That portion of the claims is the only instance that NCR's Mobile Pass might be relevant to Aeritas' infringement claims against Delta and US Airways since the service that NCR provides is the delivery of an e-boarding pass. Critically, to the extent Aeritas seeks to prove that an e-boarding pass is received or communicated to a mobile device, such an event can be shown through less burdensome and intrusive means than to require NCR to produce its highly confidential source code.  Borucki Decl., ¶ 8.  For example, Delta and US Air could have a demonstrative e-boarding pass delivered to one of Aeritas' counsel's mobile device.  Borucki Decl., ¶ 8.

    Furthermore, as a non-party, NCR should not be saddled with the undue burden of producing source code, an intrusion into closely-guarded intellectual

property that is central to NCR's market competitiveness.  *See Realtime Data*, 2012 WL 1905080, at \*3 ("The Court agrees with Ortiva that production of its source code constitutes an undue burden.  Ortiva is not a party and not alleged to be an infringer. Ortiva's concerns regarding the security of its source code, despite the protective order, cannot be ignored").  In the context of evaluating subpoenas issued to third parties, a court "will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance." *Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC,* 227 F.R.D. 421, 426 (M.D.N.C. 2005). In this case, the burden for third party NCR to produce its highly confidential source code far outweighs the benefit of Aeritas' inspection of that source code.

Specifically, Aeritas' contention that NCR's source code is the "best evidence" of the claimed "authorization" step is unfounded.  NCR's Mobile Pass does not authorize the delivery of a boarding pass – and therefore NCR's source code would not be probative of the authorization step – nor does NCR's Mobile Pass communicate that an airline passenger is authorized to receive a boarding pass.  Borucki Decl., ¶ 6.

In short, the software underlying NCR's Mobile Pass service has nothing to do with the allegedly infringing aspects of Delta's and US Air's boarding process. Borucki Decl., ¶ 9.  Indeed, what the software underlying NCR's Mobile Pass does

is wholly unrelated to Aeritas' infringement claims.  Specifically, the software optimizes the appearance of the e-boarding pass for the particular mobile device screen to which it will be delivered.  This optimization reduces the number of read failures of the boarding pass and gives NCR an important competitive advantage in the mobile device software market.  Borucki Decl., ¶ 7.  On balance, given the critical importance of this source code to NCR versus the scant evidence it might provide to Aeritas, that competitive advantage should not be put at risk by ordering NCR to disclose its source code.

      (4)    <u>Request No. 9: All documents related to any market or consumer research, study and/or survey, undertaken with respect to any Mobile Boarding Application concerning the absolute or relative advantage or benefits thereof to [NCR] customers or prospective customers, including any Defendant.</u>

NCR objected to this request on the grounds that it is overbroad, vague and ambiguous, and seeks production of confidential information.  As discussed above, seeking documents "related" to "any Mobile Boarding Application" is far too expansive in reach and would include NCR systems and products that have not been provided to Delta or US Air.  Even if the request is limited to NCR's Mobile Pass service, market studies on this NCR product, to the extent they exist, would be not be relevant to Aeritas' infringement claim.  Such studies would focus on the advantages of NCR's Mobile Pass (i.e. optimization of the appearance of the

boarding pass to reduce read errors) and not the purchase/boarding process claimed by Aeritas because, as discussed above, NCR does not provide the complete purchase/boarding process to Delta and US Air.  Borucki Decl., ¶¶ 6-7.

Additionally, NCR's non-public market studies are confidential to NCR.  On balance, given the importance to NCR of these kinds of reports versus the minimal evidentiary or discovery value to Aeritas, the objection should be sustained. *United Technologies Corp. v. Mazer*, No. 05-80980, 2007 WL 788877, at *1 (S.D. Fla. Mar. 14, 2007) ("Courts must also consider the status of a witness as a non-party when determining the degree of burden; the status of the person as a non-party is a factor often weighing against disclosure.") (citation omitted).

Finally, NCR stands on its objection that a "relative" advantage and an "absolute" advantage is undefined and renders the request vague and ambiguous.

(5)     Request No. 10: All documents referring to or consisting of marketing or advertising any Mobile Boarding Application that touts the advantages or value of said Mobile Boarding Application, including without limitation sales pitches and/or presentations made to prospective customers, including any Defendant.

Again, for the reasons discussed above, NCR's sales pitches, advertisements, and marketing materials would have no bearing on the ticket purchase/boarding process at Delta and US Air accused of infringement.  NCR does not provide Delta and US Air with these systems.  The sales pitches, advertisements and marketing

materials relevant to this litigation would be those within the custody and control of Delta and US Air.  Aeritas should be required to seek these documents from the defendants.

Aeritas mistakenly contends that these documents are relevant to damages and non-obviousness considerations.  But "to be probative of nonobviousness, the objective evidence must contain a nexus between what it purports to show (i.e., commercial success, long felt need) and the features of the claimed invention."  *In re Dippin' Dots Patent Litig.*, 249 F. Supp. 2d 1346, 1361 (N.D. Ga. 2003), *aff'd* 369 F.3d 1197 (11th Cir. 2004), (citing *J.T. Eaton & Co., Inc. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997)).  Aeritas does not own a patent to the process of creating an e-boarding pass (as discussed, the process in Mobile Pass), so evidence reflecting NCR's commercial success with its Mobile Pass is irrelevant to any damages or non-obviousness theory that Aeritas might present.

      (6)     <u>Request No. 1</u>: All communications with one or more of the Defendants regarding the Aeritas Litigations.

               <u>Request No. 3</u>: All communications with one or more of the Defendants related to the operation of any Mobile Boarding Application and/or any Accused Product since 2007.

               <u>Request No. 4</u>: All agreements with any Defendant regarding any Mobile Boarding Application and/or any Accused Product.

               <u>Request No. 5</u>: All communications with one or more of the Defendants regarding any indemnity or duty to defend claims related to the Aeritas Litigations.

These requests should have been made of the defendants, not non-party NCR.  By definition, defendants have in their possession all communications that NCR has made to or received from a defendant.  It is illustrative of Aeritas's disregard for the burden it seeks to impose on non-party NCR that Aeritas is seeking to compel production of documents Aeritas already received from the defendants – to wit, Delta and US Air have already produced their agreements with NCR regarding Mobile Pass**.**

As to documents reflecting communications regarding the underlying lawsuit between NCR, US Air, and Delta, those communications are solely among attorneys and are protected from disclosure by the common interest doctrine, attorney-client privilege, and work-product doctrine.  *See Union Carbide Corp. v. Dow Chem. Co.*, 619 F. Supp. 1036, 1047 (D. Del. 1985) (citation omitted) ("Third

party communications do, however, retain a protective shield if the parties have a common legal interest, such as where they are co-defendants or are involved in or anticipate joint litigation."). Similarly, whether an indemnity obligation exists is irrelevant to the claims and defenses in the underlying lawsuit and is therefore a topic not subject to discovery. Fed. R. Civ. P. 26(b)(1).

## III.   CONCLUSION

The Court should deny Aeritas's motion to compel non-party NCR to produce documents responsive to Aeritas's subpoena. Instead, the Court should enter a protective order relieving NCR from an obligation to produce its source code, and only requiring NCR to produce the requested documents to the extent they are not available from a party.

Respectfully submitted this 28th day of January, 2013.

/s/ John Jett
Corin McCarthy (GA Bar No. 482148)
John Jett (GA Bar No. 827033)
KILPATRICK TOWNSEND
& STOCKTON LLP
1100 Peachtree Street, NE, Suite 2800
Atlanta, Georgia 30309
(404) 815-6500 (telephone)
(404) 815-6555 (facsimile)
cmccarthy@kilpatricktownsend.com
jjett@kilpatricktownsend.com

*Counsel for Non-Party NCR Corporation*

21

## **<u>RULE 7.1(D) CERTIFICATE</u>**

The undersigned counsel certifies that this document has been prepared with

one of the font and point selections approved by the Court in Local Rule 5.1(B).

/s/ John Jett
John Jett (GA Bar No. 827033)
KILPATRICK TOWNSEND
& STOCKTON LLP

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| AERITAS, LLC, | ) |
| | ) Miscellaneous Action No.: 1:13-MI- |
| Plaintiff, | ) 0003 |
| | ) |
| v. | ) (derived from *Aeritas, LLC v. Delta* |
| | ) *Airlines, Inc.*, Case No. 11-cv-00969- |
| DELTA AIRLINES, INC., | ) SLR (D.Del.)) |
| | ) |
| Defendant. | ) |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 28, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email documentation of such filing to those of the following attorneys who are registered to use that system. I further certify that I also served the foregoing on the following attorneys via U.S. mail, postage pre-paid, and addressed as follows:

David M. Pernini                    *Counsel for Plaintiff Aeritas, LLC*
Elizabeth C. Murphy
Wargo & French LLP
999 Peachtree Street, N.E.,
Atlanta, GA 30309
(404) 853-1500

Marc A. Fenster                    *Counsel for Plaintiff Aeritas, LLC*
Andrew D. Weiss
Shani Tutt
Russ, August & Kabat
12424 Wilshire Boulevard
Los Angeles, CA 90025-1031

Jack B. Blumenfefld                    *Counsel for Delta Airlines, Inc.*
Morris, Nichols, Arsht &
Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200


Stephen E. Baskin                       *Counsel for Delta Airlines, Inc.*
Patrick M. Lafferty
Shayne E. O'Reilly
Kilpatrick Townsend & Stockton
607 14th Street NW, Suite 900
Washington, DC 20005-2018
(202) 508-5800


Christopher Murphy                      *Counsel for Non-Party NCR*
NCR Corporation                         *Corporation*
3097 Satellite Blvd., Bldg. 700
Duluth, GA 30096
(678) 808-7555


This 28th day of January, 2013.


                          /s/ John Jett
                          John Jett (GA Bar No. 827033)
                          KILPATRICK TOWNSEND
                          & STOCKTON LLP


24