IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AERITAS, LLC, | |
| | CIVIL ACTION FILE NO. |
| Plaintiff, | 1:13-CV-00346-RWS-WEJ |
| v. | |
| DELTA AIRLINES, INC., | (derived from *Aeritas, LLC v. Delta Airlines, Inc.,* Case No. 11-cv-00969-SLR (D. Del.) |
| Defendant. | |

## ORDER

This matter is before the Court on Plaintiff Aeritas, LLC's Motion to Compel Production of Documents and Things From NCR Corporation [1]. For the reasons explained below, said Motion is **DENIED.** However, the Court **MODIFIES** the subpoena issued to non-party NCR Corporation ("NCR") and **ORDERS** NCR to produce four categories of documents described infra.

## I.   BACKGROUND

On March 1, 2012, Aeritas served a subpoena [1-11] upon NCR in this District in connection with patent infringement actions it filed in the United States District

Court for the District of Delaware against various airline defendants (including Delta Air Lines and US Air).[1]  The subpoena contains a detailed list of instructions, numerous definitions, and ten document requests.  (Id., Attach. A.)  NCR timely served its objections and responses to the subpoena [1-6], and its counsel (Christopher Murphy, Esq.) opened negotiations with Aeritas's counsel (Branden Frankel, Esq.) via telephone about narrowing the subpoena's scope.  (Murphy Decl. [5-2] ¶¶ 3-4.)

Following that telephone conference, by e-mail dated March 27, 2012, Aeritas proposed a "limited initial production," whereby Aeritas would reserve the "right to request supplementation of the initial production and/or further production pursuant to subpoena topics not covered by the initial production."  (Murphy Decl. ¶ 5 & Ex. A.)  In response to Aeritas's proposal for an open-ended subpoena, on April 13, 2012, NCR proposed to limit the subpoena to, and was willing to produce, documents in the following four categories:

> (1)  NCR's technical documents, excluding source code, regarding how the mobile boarding pass products provided by NCR to Delta and US Air (called "Mobile Pass") operate;

---

[1] The complaints in the five underlying patent infringement actions and the two allegedly infringed patents are in the record as Exhibits A and B [1-2] to the Declaration of Andrew D. Weiss, Esq. [1-1].

2

 (2) documents with the names of NCR personnel familiar with Mobile Pass;

 (3) to the extent they exist, documents reflecting the benefits of Mobile Pass to Delta and US Air; and

 (4) non-privileged communications about the underlying patent litigations with Delta and US Air.

(Murphy Decl. ¶ 6 & Ex. B.)

 In an e-mail dated May 17, 2012, Mr. Frankel on behalf of Aeritas wrote as follows:

> Thanks for the follow up.  Aeritas can agree to the substance of the production you have outlined in categories 1-4 of your e-mail. However, without reviewing the production, I cannot say whether such a production will be sufficient or whether we will ultimately need NCR's source code.  Aeritas cannot agree to a final, close-ended scope of the subpoena.

> The subpoena is valid and seeks evidence relevant to these issues.  We are eager to avoid court intervention, but, if NCR does not agree to production under the terms I have outlined, we will be forced to move to compel compliance with the subpoena.

(Murphy Decl. ¶ 7 & Ex. C.)

 At this juncture, the sticking point was NCR's refusal to produce its source code.  However, Aeritas apparently lost interest in the subpoena.  About six months later, in November 2012, plaintiff's attention returned to the subpoena, and in further

negotiations through different counsel (Mr. Weiss), Aeritas again sought NCR's source code.  (See Compl. Ex. H [1-9].)  NCR again expressed willingness to produce documents, but sought Aeritas's agreement that it would not seek from NCR documents that could be obtained from a defendant in the underlying suits, documents that were privileged, or documents that revealed NCR's source code. (Id.) Aeritas rejected NCR's proposal and instead filed the instant Motion to Compel on January 11, 2013.

## II.    ANALYSIS

The Federal Rules of Civil Procedure allow broad discovery, authorizing parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Also, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."    Id.   Relevant information for discovery purposes includes any information "reasonably calculated to lead to the discovery of admissible evidence," and need not be admissible at trial to be discoverable. Id. District courts have broad discretion to determine relevancy for discovery purposes.    See Marshall v.

4

Westinghouse Elec. Corp., 576 F.2d 588, 592 (5th Cir. 1978).[2]  Similarly, district courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C).  Limits should be imposed where the burden or expense outweighs the likely benefits.  Id.

In addition to relevance, Rule 45 imposes a requirement upon the party or attorney issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(c)(1). In conducting this analysis, "non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue."  Whitlow v. Martin, 263 F.R.D. 507, 512 (C.D. Ill. 2009).  In Schaaf v. SmithKline Beecham Corp., 233 F.R.D. 451 (E.D.N.C. 2005), the district court explained that "in the context of evaluating subpoenas issued to third parties, a court 'will give extra consideration to the objections of a non-party, non-fact witness in weighing

---

[2] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981.  Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc).

5

burdensomeness versus relevance.'" Id. at 453 (quoting Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC, 227 F.R.D. 421, 426 (M.D.N.C. 2005)).

The e-mails discussed above show that counsel resolved through negotiation in May 2012 what NCR would produce in response to Aeritas's subpoena, with the exception of its source code. Thus, the Court holds the parties to the agreement they reached. Had there been no agreement, the Court would have modified the subpoena in an identical manner, because much of what is sought from non-party NCR should be available from one or more of the defendants in the underlying lawsuits, and the subpoena seeks production of privileged information. See Brilliant Alternatives, Inc. v. Feed Mgmt. Sys., Inc., No. 1:09-CV-2348-RWS, 2011 WL 72336, at *6 (N.D. Ga. Feb. 22, 2011) (denying motion to compel directed to non-party because "the Plaintiffs sought much of the same information already requested from the Defendants"); Fed. R. Civ. P. 45(c)(3)(A)(iii) (authorizing Court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies").

Accordingly, the Court **ORDERS** NCR to produce the following:

(1)     NCR's technical documents, excluding source code, regarding how the mobile boarding pass products provided by NCR to Delta and US Air (called "Mobile Pass") operate;

(2)     documents with the names of NCR personnel familiar with Mobile Pass;

(3)     to the extent they exist, documents reflecting the benefits of Mobile Pass to Delta and US Air; and

(4)     non-privileged communications about the underlying patent litigations with Delta and US Air.

With regard to the source code, plaintiff claims, in conclusory fashion, that it must obtain NCR's source code in connection with proving its infringement case against the airline defendants.  The Court agrees with NCR that the source code appears irrelevant to the underlying lawsuits but vital to NCR's ability to compete in the marketplace.  (See Robert Borucki Decl. [5-1].)  Although a protective order is in place in the underlying lawsuits, a non-party's source code marks an exception to that general rule, and here it would constitute an undue burden on NCR to require the source code's production.   See Realtime Data, LLC v. MetroPCS, No. 12cv1048-BTM (MDD), 2012 WL 1905080, at *3 (S.D. Cal. May 25, 2012) ("The Court agrees with Ortiva that production of its source code constitutes an undue

7

burden.  Ortiva is not a party and not alleged to be an infringer.  Ortiva's concerns regarding the security of its source code, despite the protective order, cannot be ignored"); Fed. R. Civ. P. 45(c)(3)(A)(iv) (authorizing the Court to quash or modify a subpoena that "subjects a person to undue burden").  Therefore, NCR is not required to produce its source code.

**III.**   **CONCLUSION**

For the reasons explained above, Plaintiff Aeritas, LLC's Motion to Compel Production of Documents and Things From NCR Corporation [1] is **DENIED.** However, the Court **MODIFIES** the subpoena issued to non-party NCR Corporation and **ORDERS** it to produce documents responsive to the four categories referenced above within fourteen (14) days of the docketing of this Order.

The Clerk is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO ORDERED**, this 7th day of February, 2013.

_Walter E. Johnson_
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

8